UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Troy Guidry                                    Civil Action No. 06-569

versus                                         Judge Tucker L. Melançon

The Offshore Drilling Company,                 Magistrate Judge Mildred E. Methvin
Inc.

## MEMORANDUM RULING

Before the Court is defendant's Motion for Summary Judgment [Rec. Doc. 7], plaintiff's Memorandum in Opposition thereto [Rec. Doc. 13], and defendant's Supplemental and Reply Memorandum [Rec. Doc. 18]. For the reasons set out below, defendant's Motion will be GRANTED in part and DENIED in part.

## I. BACKGROUND

On or about July 23, 2003, plaintiff, Troy S. Guidry, was employed by defendant, The Offshore Drilling Company (TODCO), as a roustabout assigned to the jack-up drilling vessel, "RBF 152," which was stacked in preparation to be sent to a work site in the Gulf of Mexico, off the coast of Louisiana. (*Plaintiff's Complaint,* para. 4-6; *Defendant's Memorandum* p. 2). While working aboard RBF 12, Guidry sustained injures to his lower right back, right leg and kneecap, which he presented with at the Lake Charles Memorial Hospital Emergency Room on July 24, 2003 and was diagnosed with a right gluteal strain and right knee contusion. (*Plaintiff's Complaint,* para. 8, *Defendant's Memorandum,* p. 2).

On January 4, 2005, having received ongoing treatment from several medical doctors

1

from the time of the accident, Guidry submitted to an independent medical exam with Patrick A. Juneau, III, M.D., a neurosurgeon in Lafayette, Louisiana, who found that Guidry had a prominent disc herniation and believed him a candidate for corrective surgery. On March 3, 2005, Dr. Juneau performed a right L3-4 microdiscectomy, bilateral L3 laminectomy and repair of a cerebral spinal fluid leak. *(Id.)*. Following the surgery, Guidry developed a spinal fluid leak and underwent a second surgical procedure to repair the leak on March 23, 2005. *(Plaintiff's Opposition,* p.4). On April 13, 2005, upon presenting to Dr. Juneau for an evaluation of his continuing leg and back pain, Dr. Juneau stated that Guidry was unable to return to employment at that time. *(Id.)*. Guidry continued to report to Dr. Juneau with complaints of increasing pain and discomfort on May 25, 2005 and August 12, 2005. *(Id.* at 5). MRIs were conducted, and Dr. Juneau discussed the possibility of performing of a transforamenal lumbar interbody fusion ("TLIF") surgical procedure with Guidry. *(Id.)*. However, Dr. Juneau strongly advised that Guidry hold off on the surgery as long as possible, and first undergo physical therapy. *(Id.)*.

On January 30, 2006, Dr. Juneau found that Guidry was "essentially at maximum medical improvement" and recommended a Functional Capacity Evaluation to outline his specific work capabilities because he would not be able to return to work as a derrick hand. *(Defendant's Memorandum,* p. 4). This office visit and Dr. Juneau's assessment that Guidry had reached maximum medical improvement at that time is significant in the instant Motion before the Court. At the January 30, 2006 office visit, Dr. Juneau again stated that lumbar fusion surgery was an option to help alleviate Guidry's complaint's of pain, but strongly

2

recommended against plaintiff undergoing the surgery. Based on Dr. Juneau's medical report designating plaintiff at maximum medical improvement, TODCO terminated Guidry's maintenance and cure benefits on January 30, 2006.

On March 1, 2006, Guidry called Dr. Juneau with complaints of new injuries to his neck and shoulders and increasing pain resulting from a fall, which he said was caused by giveaway weakness in his legs and pain in his back from the original injury. (*Plaintiff's Opposition,* p. 7). At that time, Dr. Juneau recommended that Guidry undergo additional MRIs of his right shoulder, cervical spine and lumbar spine, which Guidry did on May 9, 2006. (*Defendant's Memorandum,* p. 5). Both on March 1, 2006 and again on May 12, 2006, after reviewing the MRIs, Dr. Juneau re-instructed Guidry that the TLIF was a surgical option if the "pain was intractable" but advised that Guidry should not undergo further surgery. (*Id.*). Dr. Juneau did not identify any other medical treatment that would improve Guidry's condition. (*Id.*)

On April 3, 2006, plaintiff brought the instant action seeking reinstatement of maintenance and cure under General Maritime Law, 28 U.S.C.A. sec. 1333, et seq., and the Jones Act, 46 U.S.C. sec. 688, claiming that defendant's decision to terminate Guidry's maintenance and cure benefits was arbitrary and capricious. Plaintiff alleges that TODCO should have reinstated maintenance and cure benefits and paid for the additional diagnostic testing and medical treatment recommended by Dr. Juneau on March 1, 2006 and May 12, 2006, including the MRIs and the TLIF procedure which plaintiff would like to undergo. (*Plaintiff's Complaint*).

Defendant seeks dismissal of plaintiff's claims for maintenance and cure. Defendant's represent that it provided maintenance and cure benefits until January 30, 2006, when plaintiff's treating physician, independent medical examiner Dr. Juneau, clearly declared that he had reached maximum medical improvement. Defendant alleges that its obligation to provide maintenance and cure terminated when Dr. Juneau assessed that Guidry had reached maximum medical improvement ("MMI") on January 30, 2006; or alternatively on May 12, 2006, when Dr. Juneau reviewed additional MRI evidence and did not recommend any treatment option that would improve Guidry's condition and further advised against the surgical option that might alleviate Guidry's subjective complaints of pain. (*Defendant's Memorandum* p.2).

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the

moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[1] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little,* 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

Seamen injured in the course of their employment are entitled to maintenance and cure benefits until they reach the point of maximum medical cure (hereinafter "MMC" or "MMI"). *Vaughan v. Atkinson,* 369 U.S. 527 (1962); *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir.1987). The United States Court of Appeals for the Fifth Circuit has determined that point of maximum medical cure is when "it appears probable that further treatment will result in no betterment of the seaman's condition." *Boudreaux v. U.S.*, 280 F.3d 461 (5th Cir. 2002); *Gaspard v. Taylor Diving & Salvage Co., Inc.*, 649 F.2d 372, 374 n. 3 (5th Cir.1981)(*quoting, Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir.1979)). The maintenance and cure obligation does not encompass merely palliative care. *Pelotto,* 640 F2d. at 400. Whether a seaman reaches the point of MMC is a medical question and reliance on the advice of a physician is necessary to determine that point. *Breese v. AWI, Inc.,* 823 F.2d 100 (5th Cir. 1987). Payments may be terminated when it is determined that the seaman has reached maximum medical cure, and a determination to terminate a seaman's right to maintenance and cure must be unequivocal. *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir.1985). "[W]hen there are ambiguities or doubts [as to a seaman's

6

right to receive maintenance and cure], they are to be resolved in favor of the seaman." *Id., quoting Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962). If an employer willfully and wantonly fails to pay maintenance and cure, the seaman may recover past maintenance and cure plus attorney's fees. *See Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1512-13 (5th Cir.1995) (en banc). The broad purposes which maintenance and cure payments serve should not be defeated "by restrictive and artificial distinctions.... If leeway is to be given in either direction, all the considerations which brought the liability into being dictate it should be in the sailor's behalf." *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990)(*quoting Aguilar v. Standard Oil Co.*, 318 U.S. 724, 735(1943)). The facts of this case must be considered in light of the foregoing jurisprudence.

The undisputed material facts establish that Dr. Juneau unequivocally stated that plaintiff was "essentially at maximum medical cure" on January 30, 2006. Also, the evidence shows that at the time of the January 2006 visit, Dr. Juneau reviewed the post-operative MRI of plaintiff's lumbar spine and acknowledged that the TLIF surgery was an "option...if [defendant's] pain is intractable," but strongly advised against it; he did not suggest any other medical treatment to improve Guidry's condition. Therefore defendant was not improper in terminating maintenance and cure at that time. *See Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir.1985). However, plaintiffs posit that there are contested issues of fact regarding whether defendant's maintenance and cure obligation was reinstated post-January 30, 2006 arising from Dr. Juneau's recommendations regarding the TLIF surgery and other additional recommended procedures, specifically:

1. Whether plaintiff's fall at home was because of pain and weakness from the original work-injury, and whether the additional medical treatment recommended and performed after January 30, 2006 are therefore attributable to the original injury so that defendant was arbitrary and capricious in failing to pay for the additional recommended procedures. (*Plaintiff's Statement of Material Issues of Fact*).

2. Whether the TLIF surgery, which was discussed as an option but repeatedly advised against by Dr. Juneau, is merely palliative, or since there is some chance that the surgery would also improve plaintiff's physical condition, defendant was arbitrary and capricious in terminating maintenance and cure benefits and refusing to pay for the surgery, particularly as Dr. Juneau stated that he would not consider plaintiff at MMI if he elected to undergo the surgery. (*Id.*).

Defendant argues that plaintiff's subsequent fall at home, even if due to purported lingering pain and weakness, was the separate and unrelated cause of defendant's additional injuries and aggravated his chronic subjective pain complaints. Therefore defendant's maintenance and cure obligation was not re-opened; plaintiff is not entitled to recover payment for medical treatment received for injuries related to the fall, nor is plaintiff entitled to undergo an elective spinal fusion surgery at TODCO's cost pursuant to its maintenance and cure obligation. (*Defendant's Memorandum,* p. 11). Defendant relies on *Fernandez v. United Fruit Co.,* 183 F.Supp. 642, 644 (E.D..La. 1960), in which the court held, "A

seaman seeking recovery of maintenance must show that his disability manifested itself in the service of respondent's vessel, or that it is related to an injury or illness sustained during his employment by respondent...[As] libelant's disability was unrelated to his employment, he is not entitled to maintenance beyond the day on which he was last paid." In the alternative, defendant argues that if MMI was not reached as of January 30, 2006, it was certainly reached as of May 12, 2006, after Dr. Juneau's reviewed the MRI's performed on May 9, 2006, which were ordered after plaintiff's March 2006 visit with Dr. Juneau following his fall, at which point he did not suggest any medical treatment that would improve Guidry's condition and reaffirmed his strong advisement against undergoing the TLIF procedure "if at all possible." *(Defendant's Exhibit F-3: Dr. Patrick Juneau's Office Note, dated May 12, 2006).*

Plaintiff argues that the medical evidence and testimony of Dr. Juneau clearly establish Guidry's continuing right to receive maintenance and cure, including payment of the medical treatments received after January 30, 2006 and the TLIF procedure, to which Guidry has announced his intent to undergo. (*Plaintiff Memorandum*, p. 2). Plaintiff posits that Dr. Juneau's March 1, 2006 and May 12, 2006 recommendations regarding the surgery and other treatments advised after plaintiff's fall at home are causally related to the work incident for which maintenance and cure was originally paid. *(Id.)*. Plaintiff asserts that the TLIF procedure is not purely palliative, and additionally points out that Dr. Juneau testified that he would not consider Guidry at MMI if he elected to have the TLIF performed. Therefore, plaintiff claims that he is entitled to receive maintenance and cure, and defendant

is arbitrary and capricious in refusing to pay same.

The facts show that on March 1, 2006, Guidry contacted Dr. Juneau with new complaints of pain and injuries, which he claimed resulted from a fall that was caused by lingering pain and weakness from his original work-injury. (*Defendant's Exhibit I: Plaintiff's Response to Request for Admission*). In his deposition, Dr. Juneau opined that it was more probable than not that Gudiry's fall was attributable to pain related to the original injury. (*Deposition of Dr. Patrick Juneau,* p. 25). When there are doubts or ambiguities to a seaman's right to receive maintenance and cure, they are to be resolved in favor of the seaman, who are wards of the Court. See *Vaughn v. Adkinson et al,* 369 U.S. 527 (US 1962). In viewing the evidence in the light most favorable to the non-movant, the Court finds that there is a genuine issue of material fact to whether the medical evidence establishes that the fall and subsequent injuries were causally related to the original injury. Therefore, there is a genuine issue of material fact as to whether maintenance and cure should have been reinstated and whether defendant is obligated to pay for the additional diagnostic testing (MRIs) which Dr. Juneau recommended.

However, as it were, since declaring Guidry at MMI on January 30, 2006, Dr. Juneau has not recommended any treatment that would improve Guidry's condition, and in his deposition, Dr. Juneau affirmed that Guidry reached MMI both in January 2006 and May 2006. (*Deposition of Dr. Patrick Juneau, p. 38-39*). On May 12, 2006, upon review of the MRIs, Dr. Juneau affirmed that Guidry had no reccurent disc herniation or "striking abnormalities at any level." (*Defendant's Exhibit F-3: Dr. Patrick Juneau's Office Note, dated May 12, 2006)*. At that time, Dr. Juneau did not identify any treatment that would improve Gudiry's condition. He did note

that Guidry complained that the pain was unbearable and that surgery was an option if "his pain is intractable" because the TLIF "may very well reduce his pain to a more tolerable level". (*Id.*) However, Dr. Juneau reiterated several times that he had advised Guidry "to not undergo any further surgery upon his lumbar spine if at all possible." (*Id.*). The Court thus finds that the medical evidence unequivocally establishes that plaintiff reached MMI as of May 12, 2006 when Dr. Juneau confirmed that there was no recurrent herniated fragment at the disc to explain Guidry's new complaints of pain and no recommended treatment to improve Guidry's condition. Defendant is thus entitled to judgment as a matter of law to the extent that plaintiff seeks reinstatement of maintenance and cure beyond May 12, 2006, or repayment for related medical treatment received after May 12, 2006.

Plaintiff would argue that Dr. Juneau's statement that he would not consider Guidry at MMI if he elected to undergo the TLIF procedure precludes a determination that Guidry reached MMI. Plaintiff has announced his intention to undergo the procedure, and claims that defendant should pay for the procedure pursuant to its maintenance and cure obligation because there is a chance that the surgery would also improve Guidry's condition . In reviewing the evidence before the Court, Dr. Juneau described the surgery as "primarily a palliative procedure" and elaborated that the "primary goal would be to help reduce his pain" even if it was not designed *solely* to reduce pain. (*Id.* at 23). Dr. Juneau also offered the surgery as an option in response to Guidry's increasing complaints of pain, but still advised against it. (*Deposition of Dr. Patrick Juneau, p. 42, see also Defendant's Exhibit F-3: Dr. Patrick Juneau's Office Note, dated May 12, 2006).* Regarding the chance that the surgery would also have some curative effect, Dr.

11

Juneau explained, "[T]o my conception of physical condition....I am incorporating pain in the physical condition. That's part of my definition of his physical well being. If his pain is 50% better, which would be the goal..." (*Id.* at pp. 41-42). Dr. Juneau also testified that he could not say more likely than not that the TLIF would improve Guidry's work capacity, but only might "if he's lucky." (*Id.* At 33).

Based on the evidence before it, the Court finds the TLIF procedure is merely palliative, clearly and repeatedly identified by Dr. Juneau as an option to treat pain, in response to Guidry's complaints of unbearable increasing pain, but nevertheless strongly advised against. Dr. Juneau gave no indication that the TLIF would improve Guidry's condition or treat the "cause of the pain," notably Dr. Juneau could not identify any objective diagnostic, physical or neurological basis for the surgery. (*Id.* at 34). Moreover, the mere lucky chance that the surgery might improve Guidry's condition prevents plaintiff from establishing its burden that the proposed treatment will "probably" better his condition. *See Morales v. Garijak, Inc.,* 829 F.2d 1355 (5th Cir. 1987). "The accepted legal standard holds that maximum cure is achieved when it appears probable that further treatment will result in no betterment of the seaman's condition. Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Pelotto v. L & N Towing Co.,* 604 F.2d 396, 400 (5th Cir. 1979).

12

## IV. CONCLUSION

For the foregoing reasons, the Court finds that there is a genuine issue of fact to whether defendant's maintenance and cure obligation was reinstated due to Guidry's fall and subsequent injuries, which arguably was causally related to the original work-injury, until May 12, 2006, at which point the medical evidence unequivocally establishes that plaintiff reached maximum medical cure. However, there is no genuine issue of material fact regarding the palliative nature of the TLIF proceeding and defendant's obligation regarding such; plaintiff is not entitled to elect to undergo the TLIF procedure at defendant's cost. Defendant's maintenance and cure obligation terminated as of May 12, 2006. Wherefore defendant's Motion for Summary Judgment will be GRANTED in part, to the extent that plaintiff seeks reinstatement and recovery of maintenance and cure beyond May, 12, 2006 and coverage of the TLIF procedure; and DENIED in part, to the extent that plaintiff seeks recovery of maintenance and cure benefits between January 30, 2006 and May 12, 2006.